We're going to start off with C.B. Mining and Mr. Gresham. When you're ready, we'll hear from you. Good morning, Your Honors. This involves the appeal of an award of black loan benefits to a miner who was employed in the coal mines for less than 15 years. So we're not dealing with the 15-year presumption, which has engaged this court quite a bit in the last few years. In this case, the administrative law judge at first accepted into evidence the interpretations of three separate CT scans. However, in his decision, he asserted that case law from the Benefits Review Board only allowed one reading and then excluded the other two, and sua sponte chose which one was going to be allowed in. On appeal, we argued that that was improper, that the decision of Weber v. Peabody Coal Company states that one interpretation of each piece of evidence under the section can be allowed, and the entire board agreed. However, two of the members stated it was not harmful or it was harmless error since we did not show how it would harm us. Judge Boggs, in dissent, stated that that interpretation would mean that the improper exclusion of evidence would always be harmless because how could anyone with any certainty state that the judge would have decided this way had he reviewed all of the evidence? How is that prejudicial to you, and are you required to show it's prejudiced as to this excluded evidence in and of itself or in combination with any other alleged errors? Your Honor, there really isn't any standard for that. The board cited the Shineski case from the Supreme Court, which did not adopt any new standard. It just stated that all courts and administrative bodies should apply the same rules that courts would apply in a civil case and stated that they didn't believe the requirement was particularly onerous or that there would be any complex rules for burdenship. Tell us what the prejudice is. The prejudice in this case is our physicians, Dr. Sfino and Castle, relied on all three CT scans to show and to determine that the disease that Mr. Addison had was not coal worker's pneumoconiosis, but instead was a disease known as either idiopathic pulmonary fibrosis or usual interstitial pneumonia, which is not related to coal dust exposure. Particularly, Dr. Fino reviewed a CT scan that was earlier, before Mr. Addison had filed his claim, and he asserted that the rapid change, not just the change, but the rapid change in that CT scan to the later CT scans and to the chest X-rays was not related, was not due to coal dust, which, while progressive, is a slowly progressing disease, not rapidly like this one did. Is a CT scan a form of X-ray? What is a CT scan? Does it use, what does it use? I will use the explanation a lot of the doctors give me. A chest X-ray is like looking at a loaf of bread, the front and the side, while a CT scan actually slices that loaf of bread. I understand, but what is the technology? It is a X-ray in which the person. Is it original? Yes, it is. They can actually reformat it so it's looking down in the lungs as opposed to straight at the lungs. What provides more information, an X-ray or a CT scan? Most doctors would say a CT scan is the best of those. It's a little more expensive and it's a little more invasive, if you will, because there is a lot more radiation involved, not a terrible amount, but there is some radiation involved. Has anybody defined a CT scan as an X-ray as used in the statute? No, no. X-rays are still what? There is no ILO standards, you know, that the doctors use to read the chest X-rays with the numbers and all that. I know what's been done. I mean, we've had these cases over the years regularly, and I generally know what an X-ray is, but I was trying to find out what principles apply to CT scans. Is it other evidence or can it or should it be classified as a form of X-ray? It is classified under the regulations as what they call 718.107 evidence, other evidence. Other evidence. I know that. Isn't there a basis for that? Yes, the regulations do state in that section that other evidence is allowed, and the only standard is that a doctor must, a medical professional must state that not only is that test medically acceptable, but is also a reasonable diagnostic tool to determine lung disease, including pneumoconiosis, and our doctors did that. Well, would it be fair to say to kind of synopsize what I understand you present as your client's view of prejudice is that Dr. Fino and your other physician gave opinions on the progression of the disease and that the CT scans supported their viewpoint? And by excluding that chronological evidence, it gave less supporting weight to their opinions. Is that a fair characterization? That is part of it. And then, of course, under the Compton decision from this court that all of the evidence related to pneumoconiosis must be considered together, the judge ruled or weighed the x-rays, one CT scan, and then the medical opinions that he did not discuss or talk about the opinions they had regarding the progression of the abnormalities seen on the CT scans. To follow up on Judge Agee's question, because I had a similar conceptual difficulty, it was a little hard for me to understand what the admitted CT scans showed that the excluded CT scans did not. Your Honor, the one he admitted was the most recent. And you're saying that that skewed the record in terms of demonstrating the progression? Right, Your Honor. So that's your argument as to prejudice? Yes, and one of those CT scans was done in 2008. So it was 2008 to 2012, and that was the progression that Dr. Fino especially discussed and dealt with and relied on. What other evidence did the ALJ fail to consider in your view? Your Honor, as far as excluding evidence, that was it. What about the x-ray reading by, what was his name, Gagliano or Garciano? Your Honor, Dr. Gagliano, if I recall, interpreted a chest x-ray, but he only does what they call a quality reading. He doesn't read it for the perfusion. In other words, he doesn't read it to say there's pneumoconiosis there or there's pneumoconiosis not there. What does his footnote say? The judge's, the ALJ's footnote says, he cites cases which say that a doctor who does not, a doctor who is knowledgeable of pneumoconiosis, who does not mention pneumoconiosis in a chest x-ray, can be determined not to have found pneumoconiosis. We haven't really raised that issue. I kind of ran across that while I was preparing for this argument, and I thought it was interesting that the judge would do that. He doesn't mention it. Also, if it is so construed, then you have more of an equal poise, don't you? Yes, Your Honor. That would be true. That would be true. The ALJ did not, when he got down to actually determining the, each x-ray did not mention Dr. Gaziano's reading, other than the fact that it was a quality reading and then goes down to his footnote. But he does not weigh it at the end when he says, I have two readings by duly qualified physicians in equal poise, and then I have a reading that's positive by just a B reader. And he doesn't mention it. That's your head count argument, isn't it? Yes, Your Honor. That's the head count in microcosm, yes. At a less granular level, you phrase the issue as the ALJ improperly excluded probative CT scan evidence and failing to consider all evidence. And when I asked you to elaborate on the all evidence that the ALJ failed to consider, you said that was it, meaning the CT scan evidence? No, the CT scan evidence along with the doctors who interpreted the CT scans and said this is not pneumoconiosis because of this. That would be our main argument there. Did Forehand consider the CT scan? No. Dr. Forehand reviewed nothing but his own examination and his own x-ray reading. And that was error to not consider that in weighing the medical opinions? Yes. Well, Your Honor, our position is the claimant had the burden of proof in this case. This is not a 15-year presumption. Even though everyone agreed he was disabled, he still had to prove pneumoconiosis and the cause of pneumoconiosis and the disability causation. Dr. Forehand never diagnosed pneumoconiosis or, well, when he diagnosed chronic bronchitis, never mentioned coal dust exposure or what you'd say obstructive lung disease. When he diagnosed the minor with smoker's disease, he never mentioned coal dust exposure as a consideration there. The judge, when he says I'm going to give great weight to Dr. Forehand, cites two parts of the preamble that talk about the additive effect of coal dust and cigarette smoking in chronic bronchitis and obstructive lung disease or the similar mechanisms that dust-induced emphysema and smoke-induced emphysema have. The problem is no one diagnosed emphysema, no one diagnosed chronic bronchitis, and the only obstructive lung disease, which Dr. Forehand is the only one who found, he found it due to shortness of breath and the pulmonary function study. Never referred to it, referred to coal dust as being a cause of that. Our position is legal pneumoconiosis is a chronic dust disease of the lung related to coal dust exposure. It must be shown to arise out of. It appears to us the administrative law judge assumed that from Dr. Fino's report, but Dr. Forehand never states that the minor's coal dust exposure played any role in this obstructive lung disease. In fact, he found the reason for the minor having an impairment was the chest X-ray and the arterial blood gas study, and that's all he said. We believe that the ALJ, by citing these really irrelevant parts of the preamble, and we are not arguing that he cannot refer to the preamble, but he's got to refer to it properly. And what he did in several instances here is he were. . . When you say properly, he has to have evidence to support reliance on that. Or he has to cite parts of this preamble that actually apply to the evidence that he's discussing. That's what I'm saying. There has to be evidence in the record to fit it in that allusion. Exactly, Your Honor, exactly. Are you going to talk any about your headcount argument? And for purposes of this argument, what happens if we agree with you? Well, Your Honor, if you agree with us and there is not. . . and there was a violation of Adkins by that, then it also is in equal poise and claimant having the burden of proof under Greenwich Collieries and Mullins Coal Company of Virginia, he would necessarily lose on that issue. I just want to touch on that the administrative law judge also cited those same portions of the preamble in discrediting Dr. Fino's report where Dr. Fino talked about that Mr. Addison had this idiopathic pulmonary fibrosis, which he then stated there had been some studies that showed it occurred more often in heavy smokers. And the judge then says, oh, well, he didn't determine then how smoking wouldn't have caused or coal dust wouldn't have caused this fibrosis. And then cites the additive nature of coal dust and cigarette smoking and the similar mechanisms. Again, Dr. Fino never diagnosed Mr. Addison with any sort of obstructive lung disease, whether chronic bronchitis, COPD, or pulmonary emphysema. And therefore, again, the administrative law judge improperly cited to the preamble to discredit Dr. Fino's opinions. Is that it? That's it. All right. You have some rebuttal. Yes, sir. You can proceed. Good morning, Your Honors. May it please the Court. My name is Victoria Herman. I'm here today on behalf of the respondent, Ms. Shirley Addison, to ask this Court to affirm the decision of the Board granting benefits. The employer argues today that Judge Henley made several mistakes in his opinion, that he improperly excluded probative evidence, that he selectively analyzed other evidence and relied on improper portions or irrelevant portions of the preamble to justify an otherwise arbitrary opinion, and also that he used a head count, basically, to resolve it. And his analysis of the medical opinions, they challenged that. And it seems to me there's some serious arguments that you ought to address in that recount. On whether the CT scans impacted? No, evaluating the obstructive, restrictive. I mean, basically, the ALJ discounted these two opinions for reasons that they challenged. And you may want to address those. Yes, Your Honor. Their argument that ---- May I add, as you're in that topic, looking at Dr. Forehand's opinion, which I think would be fair to say is somewhat cursory, and compared to Dr. Fino and the other physicians, which are very, very extensive and go into great detail both historically and pathologically, if you could, in answering Judge Niemeyer's question, also discuss how the substantive differences between those opinions factors into it. Well, I think initially, you know, the fact that Dr. Fino's opinion and Dr. Castle's opinion just happens to be more lengthy isn't necessarily an indicator of whether their opinions are deserving of greater weight. That's absolutely correct, but it would be correct if the ALJ improperly characterized them. And I think there's an argument to be made that the ALJ did, with respect, for example, to Dr. Castle, I believe the ALJ found that it was entitled to little weight because it was based on generalities, and that's a tough characterization to accept. It's questionable given the specific findings that Dr. Castle made that the ALJ didn't seem, well, certainly didn't allude to, if indeed he recognized them. So you're quite right, it's not a word count. But at the end of the day, there are those two well-developed opinions that the ALJ seemed to characterize inaccurately. I think what Judge Henley was pointing to is the fact that although Dr. Castle's medical opinion was very lengthy and included a great deal of information, backstory on the medical history behind why he was saying what he was saying, the fact still comes down to that he wasn't really referencing the minor's particular situation. Well, he actually did, didn't he? I mean, his findings referenced Addison's ventilation function studies and X-rays. Yeah, I mean, obviously he does mention the specific test results and some things like that, but I think when he was going through... People reading those three opinions, it's hard, intuitively, it's hard to conclude that Dr. Forehand was better reasoned. It wasn't reasoned at all. Well, I think... I mean, it didn't conduct any analysis. It was just a conclusory statement, and that's it, right? Well, Dr. Forehand's opinion was not necessarily just a conclusive opinion. I think what Dr. Forehand was attempting to do was to analyze the factors that he knew, and although he did not necessarily have the benefit of... Did he do it himself? He did, he did, and discussed his own medical testing. He discussed the claimant's medical history, discussed the factors that he was seeing as a result of his own physical examination of Mr. Addison, and I think, more importantly, he discussed the environmental factors that were an issue here, where Dr. Fino and Dr. Castle kind of sidestepped that. He discussed it just because the man worked in a mine. He didn't discuss it based on evidence that he had found or anybody else had found. I think he did. I think what he was kind of alluding to was the fact that the X-ray did find presence of black lung, and that the symptoms that he was seeing were a result of black lung, and I think that's why Judge Henley did credit his opinion, is because he was seeing all of those things and that he credited those and credited them properly, where Dr. Fino and Dr. Castle didn't. Is there some reason he didn't look at those? I would assume, and not knowing straight off, but just kind of knowing the process, the Department of Labor doctors don't typically get other evidence kind of initially when they're doing their medical opinion. That at least is the trend that I have seen. So when he was doing his medical evaluation, that wasn't something that he necessarily had the benefit of seeing. Now, the fact that he didn't necessarily review certain evidence doesn't mean that his... Well, except there's this glaring bit of evidence that the CT scans show the shape of these opacities to be inconsistent with pneumoconiosis and that there was a progression that was inconsistent, and those two are pretty serious conclusions. They're hard evidence about what was found in the lungs, and Dr. Forehand never addressed those. He didn't, but I think he did the best medical opinion or medical evaluation that he could with the evidence that he had. Maybe he did, but then you have a judge looking at these opinions and concluding that Forehand's is better reasoned and the better conclusion. And if you accept the fact that he didn't have all this evidence, he didn't address these additional factors, which are fairly relevant pieces of information, it's hard to conclude. We're not blaming Dr. Forehand. The notion is whether his medical opinion is a better reasoned one and should be relied on. I think that the judge, I think, made a reasoned opinion when it came down to that question. But what I've been trying to understand from this record is what is it based on? Because the ALJ, for instance, I pointed out some of the arguable discrepancies in the ALJ's analysis of Dr. his criticism of Dr. Castle, which do not appear to be borne out by Dr. Castle's opinion, and you have the same problem with respect to Dr. Fino. For example, the ALJ said that Dr. Fino didn't cite literature to support his conclusion, whereas Dr. Fino absolutely did. So what you see, the problem for me is the apparent disparity. The ALJ seems to be taking a microscope to Dr. Fino and Dr. Castle and missing some significant things under that microscope, but accords a less rigorous review of a far more general conclusory opinion. Well, I think basically what Judge Henley was trying to do, and if you look, he does kind of discuss in his opinion the fact that because I think employers' argument is that excluding these two CT scans has somehow impacted the opinions of Drs. Fino and Castle and the weight that they were given, but it wasn't the CT scans that were the cause of their opinions to be discredited. The fact that these two CT scans were- Well, if that's your position, then, and there was complete agreement below it was error to exclude the CT scans, the CT scans support their opinions, Castle and Fino's opinions, that this was a progressive disease and that the type of progression it made is inconsistent with coal miners' I can't pronounce it. Pneumoconiosis. Pneumoconiosis. If you don't disagree that those were valid considerations and then Dr. Forehand doesn't address those in any way, it basically becomes unrebutted evidence in favor of the employer. Well, I think the first thing to note is that all doctors are not required to review every piece of evidence in order for their opinions to be valid. But that doesn't address the state of the record. In other words, Judge Agee's question is how do you account for the balancing of the evidence, weighing of the evidence, when it's not all taken into account? We're not here to blame whether Forehand was justified in excluding it or not. He didn't have it, and he didn't address it. Well, I think what we're really looking at is when we're trying to determine is there presence in this case, first of all, the two CT scans, whether they were admitted or not, don't have an effect on the determination of did the CT scan evidence, which is classified as other evidence, establish presence or not when viewed individually. And it didn't. The CT scan evidence the judge noted, it didn't. The argument, I don't know if it's legitimate or not, but you can address that, but the argument is that the CT scans provide a progression evidence that is inconsistent with pneumoconiosis, is consistent with causes by cigarette smoking and that type of thing. I think you're right. That is the opinion of Drs. Fino and Castle. That's also the result that can be drawn from having three CT scans as opposed to just one. So the question is why isn't that relevant evidence that is material to the determination? I think when you start looking at the record and when you look at Judge Henley's opinion, I think we do get to that. And he does note when he is reviewing Dr. Fino's medical opinion and Dr. Castle's opinion that they did use those when they were making their diagnoses. So even though they weren't admitted into evidence under the CT scans or with the CT scans under other evidence, he does talk about the fact that both of those doctors used those when making their diagnoses and that it was showing up through the years as a progression and that things had changed and they had used this as a basis for their opinion. His problem with Dr. Fino's is that when he diagnosed him with idiopathic pulmonary fibrosis, which basically means I don't know what caused it, he then said, well, but it could have been smoking. But then he turned around and said what definitely couldn't have been coal dust exposure. But how do you get it could have been smoking, but it definitely couldn't have been this other thing. He explained that. He did, but what he didn't say is why it couldn't have been. Only evidence on the CT scans. Yes. But what he didn't say was why it could not have been what is considered a lesser typical form of pneumoconiosis. And that was one of the things that, according to Judge Henley, he should have done in order to make it a complete opinion. He was avoiding talking about why it could not have been something to do with perhaps a more rare form, if that's what it was, why it couldn't have been that and it had to have been related to smoking, even though he didn't know what caused it. So there was kind of a juxtaposition of his statements there, and I think that was what Judge Henley was hitting on. I believe Judge Agy is trying to ask you a question. Yes, Your Honor. If I can take you in a different direction from the CT scans. I'm looking at page 12 of the joint appendix. The ALJ found, based on three X-rays, that there was a preponderance of evidence to support a finding of clinical pneumoconiosis. So two of them were in equipoise, and the deciding factor was the X-ray of May 20th, and the ALJ said that Dr. Scott and Dr. Miller, who were equally qualified, had come to opposite views and that, based on Dr. Forehand's opinion, who was a bee reader but not a radiologist, that he would find that the May 20th X-ray is overall positive. That looks an awful lot like, to me, as just pure and simple head counting. There's no medical reason given to credit Dr. Forehand's opinion. There's no evidentiary reason other than it's one more than the tie between the other two doctors. There's no legal reason. So why isn't this erroneous head counting? I think, Your Honor, when we start looking at it, the question is, did he fully explain himself? And I think when you start looking at it, yes, it did appear to be pretty cut and dry when he started talking about the X-ray evidence. Cut and dry. That it was, you know, that the doctor's credentials, they were either bee readers or both bee readers and board-certified radiologists. Whether the X-rays were read as positive or negative. But he went through the entire analysis. Where is it? What page do we find that on in the appendix? I don't have the appendix right in front of me. Can I...? Yeah, sure, that'd be great. You can bring it up with you if you'd like. So I'm looking at page 12, that middle paragraph. I'm not finding any reason given why Dr. Forehand's opinion tipped the scales. I think because he is certified to read those. I think it's important to note that... All of them are certified to read them. I agree. What about Gaziano? I think when you look at Gaziano, he wasn't being asked to determine was there presence or was there not. I think Dr. Gaziano reads, I think, pretty much all of the Department of Labor exam X-rays just to determine is it a decent X-ray for use in determining is there black lung present. It's just a quality reading. And he, as far as I know, has never read one of those quality X-rays and determined whether there was presence of black lung on any of them. If we assume that there is error here by use of a head count as opposed to some sort of reasoned opinion, what happens? What do we do with this case? I think if there is determined to be an error, that it would have to be sent back down to the judge to get him to explain his opinion a little bit more thoroughly why he credited this last X-ray as positive rather than negative. I think that would be the only option at that point. If, in fact, the... But I understood the employer's argument to be and that if the problem is that the evidence was, in fact, in equipoise, why would we send it back if that... employer failed to meet its burden of proof? Well, I definitely don't think the evidence is in equipoise because I think the weight of the X-ray evidence proves that there was presence of black lung, and I think that's the big issue here. Now, if you believe Judge Henley failed to sufficiently explain himself, then that would be grounds for remand to get him to fully explain his opinion. But I think when you look at the X-ray evidence as a whole and the reader's qualifications, what the X-rays actually said when they were read... How do you distinguish the reader's qualifications? Who was registered as a board-certified radiologist versus who was just a B-reader. Dr. Forehand is just a B-reader. He's not board-certified as a radiologist. Well, that doesn't help very much, does it? But whether he was a B-reader or a radiologist... Well, if you're weighing his tie-breaking capability, the fact that he was a B-reader. That it doesn't help? I think it does. I mean, because he's still been fully trained to read these to determine if there's presence. So even though he isn't board-certified, he's still been fully trained by the department, and they've signed off on his ability to determine whether there is presence of the disease. Well, I want to ask you, I think, pretty much the same question Judge Duncan asked you. If it appears that the evidence, if we conclude as a matter of law, that the evidence is in equipoise, wouldn't that require a reversal and a verdict in favor of the defendant because of the failure of the plaintiff to carry their burden of proof? Is there something different about a black lung case that would change the ordinary working of the law there? No, I think you're absolutely right. As far as procedural grounds go, that, as far as I know, would be the correct way to go. But I think in this case, it's not. I think the weight of the X-ray evidence and the weight of the medical evidence, it was in Judge Henley's discretion to determine who to give credit to, who to give more weight to when making their decisions. And, you know, he determined that Dr. Forehand had talked about everything that needed to be discussed and Dr. Fino and Dr. Castle, he felt, did not. So I think that was within his purview. May I do a quick conclusion? Your Honors, we appreciate your time here today. We would ask that because we feel the employer has failed to establish that there was any actual harm as a result of Judge Henley's exclusion of the evidence and because Judge Henley's other determinations were rational and supported by evidence, that you affirm the order by the Board. Thank you. Thank you. Mr. Gresham. Just a few comments on rebuttal. I was looking back over Judge Henley's decision. And he notes that Dr. Fino did read a CT scan. He never mentions anything about Dr. Castle. In fact, he says Dr. Castle, excuse me, Dr. Castle says, claim it does not have clinical pneumoconiosis because his x-rays do not show CWP. Never mention of the CT scan that he actually interpreted. Dr. Fino or Dr. Castle? Dr. Castle, later on, Dr. Castle. For Dr. Fino, he does state that he noted that earlier x-rays and CT scans showed some interstitial fibrosis. But then he doesn't go on to talk about Dr. Fino's actual statements that this rapid progression was the factor which told him this man did not have cold workers pneumoconiosis or CWP, it's easier sometimes to say when you're trying to get it out real quick. The other thing about the judge's treatment of Dr. Castle as, what was it, stating that he dealt with generalities as opposed to... The only thing he talked about with the generalities is Dr. Castle made the statement that it would be very unusual for him to see a minor who is disabled from pneumoconiosis without some obstruction. That's what he said, those were the generalities. Again, Judge Henley failed to even talk about the CT scan, which was very personal, very specific to Mr. Addison, yet he completely ignores that. It's our position that the scrutiny he gave to Dr. Fino and Castle compared to the cursory review he gave to Dr. Forehand's opinion just shows that's not reasoned medical judgment. Judge Henley, at the first part of his decision, goes through this fairly long discussion of how you determine something's opinion is documented and reasoned. Things like the doctors who have more medical evidence to review, who review more depth, who are better qualified, all these things, and then he just completely ignored it when he actually came down and discussed the individual reports. We believe that there's no way that Dr. Forehand's opinion and findings can be determined by an ALJ to outweigh, and that's what has to be done, it has to outweigh these other opinions, which he, again, because of our other arguments, did not fully consider because he did not consider the opinions they raised and made as far as the CT scan evidence was. And based on that, we'll close here. What's the result we should reach here? Vacating and remanding or reversing outright? What do we do? Your Honor, I would like to say just reverse, but I believe it really is a remand. I believe the exclusion of the evidence. I did have a part I wanted to mention about this court in the past talking about harmless error in federal black lung claims, and I didn't cite them because they're unpublished decisions, but they do cite to the Sahara Coal Company case from the Seventh Circuit. They stated that legal error in a federal black lung case is harmless and no remand is necessary if the decision on remand is foreordained. In other words, if there's nothing else that can be done, even if that evidence was excluded or properly excluded or came back in, the decision on remand would be exactly the same. I don't think that happens here. I think if the judge is directed to consider that evidence, a different decision may be reached. But, again, I think that would be, I think, the appropriate remedy in this case is for a vacation and remand. Thank you. We'll come down to Greek Council and proceed on to the next case.
judges: Paul V. Niemeyer, Allyson K. Duncan, G. Steven Agee